**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JACQUELINE T. LONERGAN**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ST. TAMMANY PARISH SCHOOL BOARD**<br><br>**Defendant.** | **CIVIL NO. 2:23-CV-396** |

# COMPLAINT

Plaintiff Jaqueline T. Lonergan states her causes of action against defendant St. Tammany Parish School Board as follows:

## THE PARTIES

1. Plaintiff is Jaqueline Lonergan, a person of age and majority, and a Louisiana citizen residing in St. Tammany Parish.

2. Defendant is St. Tammany Parish School Board (hereinafter "STPSB"), a statutorily created political subdivision and body corporate of the State of Louisiana.

## JURISDICTION AND VENUE

3. The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question); 42 U.S.C. § 12112 *et seq.* (disability discrimination under the ADA); and 42 U.S.C § 12203 (retaliation under the ADA), as more particularly set-out herein.

4. The Court has supplemental, subject-matter jurisdiction over Ms. Lonergan's Louisiana state law claims pursuant to 28 U.S.C. § 1367(a) because the state-law claims are so related to her federal law claims that they form part of the same case or controversy as more particularly set-out herein.

5. The Court has personal jurisdiction over STPSB because it is a statutorily created political

subdivision and body corporate of the State of Louisiana, present in all material respects within the Court's jurisdiction.

6. Venue for Ms. Lonergan's Rehabilitation claims are proper in this Court pursuant to 29 U.S.C. § 794a(a)(1) (incorporating Title VII's venue provision in Rehabilitation cases) and 42 U.S.C. § 2000e–5(f)(3) (the Title VII venue provision) because (1) the unlawful employment practices alleged herein were committed in Louisiana within this judicial district (specifically St. Tammany Parish), (2) upon information and belief the employment records relevant to this action are found within this judicial district (same), and (3) but for the unlawful employment practice, Ms. Lonergan would have continued to have been employed in this district (the same).

7. Venue for Ms. Lonergan's ADA disability and retaliation claims are proper in this Court pursuant to 42 U.S.C. § 12117 (incorporating Title VII's venue provision in ADA cases) and 42 U.S.C. § 2000e–5(f)(3) (the Title VII venue provision) because (1) the unlawful employment practices alleged herein were committed in Louisiana within this judicial district (specifically, St. Tammany Parish), (2) upon information and belief the employment records relevant to this action are found within this judicial district (the same), and (3) but for the unlawful employment practice, Ms. Lonergan would have continued to have been employed in this district (the same).

8. Venue for Ms. Lonergan's supplemental state-law claims are proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because defendant's unlawful acts giving rise to this lawsuit, as well as Ms. Lonergan's resulting injuries and damages, occurred within this judicial district (specifically, St. Tammany Parish) and, accordingly, a substantial part of the events or omissions giving rise to the claims asserted in this lawsuit occurred in this judicial district (same).

## PROCEDURAL AND STATUTORY REQUIREMENTS

9. At all relevant times in this case, STPSB employed more than 500 employees.

10. STPSB most recently hired Ms. Lonergan as one of its schoolteachers around August 15, 2021.

11. Ms. Lonergan resigned her employment in constructive discharge because of disability discrimination around November 29, 2021.

12. On December 8, 2021, Ms. Lonergan filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging discrimination based on her disability, retaliation based on her protected complaints, and STPSB's failure to reasonably accommodate that disability under the Americans with Disabilities Act (Charge No. 461-2021-00247).

13. On November 3, 2022, the EEOC issued Ms. Lonergan a Notice of Right to Sue in this matter.

14. Ms. Lonergan timely filed her complaint in this matter within 90 days of receiving the EEOC's Notice of Right to Sue letter.

## FACTS

### A. The Plaintiff – Jacqueline Lonergan

15. Jacqueline Lonergan is a 48-year-old woman. She lives in Mandeville, Louisiana with her husband and two children.

16. Ms. Lonergan is a licensed, Louisiana teacher who holds a Masters of Education degree from the University of New Orleans and is fluent in Spanish. Ms. Lonergan's family depends, in part, on her wages to support themselves.

17. In August 2020, Ms. Lonergan underwent a sleeve gastrectomy surgery to assist in losing weight. To the best of her recollection, Ms. Lonergan's treating surgeon warned her against lifting

heavy weights until she had fully healed from her surgery.

**B. The Defendant – St. Tammany Parish School Board**

18. STPSB is the statutorily created entity and public employer responsible for administering public education to the school children of St. Tammany Parish.

19. STPSB operates approximately 55 public schools.

20. STPSB is organizationally structured with a "central office" located in Covington, Louisiana that creates parish-wide policy and serves as the administrative headquarters of the STPSB school system.

21. At all relevant times, to the best of plaintiff's understanding, STPSB maintained a human resources department and employed a director of human resources that served the needs of its school system and employees.

22. At all relevant times of this case, STPSB's Supervisor of Human Resources, and its highest ranking human resources officer, was Steven Alfonso.

23. As Supervisor of Human Resources, Mr. Alfonso was the highest ranking STPSB decision-maker with respect to providing (or not providing) any STPSB employee with reasonable accommodations based on his or her disabilities and impairments under the Americans with Disabilities Act.

24. During all relevant times of this case, the principal of Mandeville Junior High was Gina Brown. Principal Brown was Ms. Lonergan's highest ranking decision-maker at Mandeville Junior High.

**C. STPSB Re-Hires Ms. Lonergan as a Special Education Teacher**

25. Ms. Lonergan was previously employed by STPSB from 2017 until early 2021.

26. During her prior employment, Ms. Lonergan was successful Spanish teacher at multiple

St. Tammany Parish schools.

27. At the time, STPSB ranked Ms. Lonergan as a "highly proficient" teacher – the second highest possible rank for a Louisiana teacher.

28. Ms. Lonergan had never received any discipline at work whatsoever.

29. Ms. Lonergan was a valued and highly respected Spanish teacher.

30. In early 2021, Ms. Lonergan voluntarily resigned her employment because her husband had been offered a valuable job opportunity in Florida. The Lonergans planned to move to Florida so Ms. Lonergan's husband could accept the job.

31. Unfortunately, the job opportunity for Ms. Lonergan's husband did not come to fruition, and so Ms. Lonergan reapplied for a teaching position with STPSB during the summer of 2021.

32. STPSB re-hired Ms. Lonergan in August 2021.

33. During the interview process, Principal Gina Brown told Ms. Lonergan that she had an immediate need to fill a special education teacher's roll at Mandeville Junior High school and offered that position to Ms. Lonergan for the 2021-2022 school year.

34. Principal Brown told Ms. Lonergan she would only be expected to teach the special education class for one year via a "Temporary Authority to Teach" certificate, and then would be reassigned to a new teaching position via the STPSB yearly job fair.

35. Ms. Lonergan had never worked as a special education teacher before, but Ms. Brown promised Ms. Lonergan she would only be responsible for teaching and instruction, and Ms. Lonergan would be assigned a permanent paraprofessional inside her class. Ms. Brown promised the paraprofessional would be required to perform all non-instructional duties related to physically lifting students with physical impairments, feeding students in need, diapering students in need, and assisting students in need with other self-care activities, and so on.

36. Based on the official job descriptions for Ms. Lonergan's teaching position and the job description of her paraprofessional, this is accurate. Ms. Lonergan's official job description does not include any non-instructional duties related to physically lifting, feeding, diapering, or assisting students with self-care.

37. In contrast, the job description for Ms. Lonergan's paraprofessional indicated all of those "essential" duties, including "lifts, positions, transfers, assists in mobility, feeds, toilets, and provides and assists in other non-complex self-care activities," including performing "complex medical procedures including catheterization, suctioning, tracheotomy care, ventilator care, gastronomy feedings" and other similar procedures for special-needs students.

38. Further, as a matter of fact, special education paraprofessionals are an integral and necessary position in all special education classrooms. To the best of plaintiff's understanding, a certified teacher cannot deliver appropriate instruction to a classroom with special needs students without the assistance of a paraprofessional.

39. Ms. Lonergan would have been reticent about accepting a teaching position that required any strenuous lifting or diapering because of her prior gastrectomy, and would not have accepted such a position.

40. However, based on Principal Brown's promises and Ms. Lonergan's official job responsibilities, she accepted the special education teaching position for the 2021-2022 school year.

**D. STPSB Denies Ms. Lonergan any Reasonable Accommodation after She Is Injured at Work**

41. Ms. Lonergan did very well at her special education teaching position and was qualified for her position.

42. Only three special-needs children were assigned to Ms. Lonergan.

43. Only one of those students required diapering, an adolescent boy.

44. The boy was approximately the same size as Ms. Lonergan, and so diapering the student required significant physical exertion, lifting, bending, and twisting.

45. Ms. Lonergan's paraprofessional for the school year was a woman named Peggy Rowell.

46. Shortly after the school year began, Ms. Rowell demanded that Ms. Lonergan perform half the necessary diapering for their male student.

47. Ms. Lonergan brought the matter to Principal Brown, but Principal Brown ordered Ms. Lonergan to perform diapering even though that was beyond the scope of Ms. Lonergan's official job responsibilities. Principal Brown was hostile during the conversation and yelled at Ms. Lonergan that she would perform half of all diapering activities on her male student.

48. Ms. Lonergan did as she was instructed and began performing diapering activities.

49. Around Friday, October 22, 2021, Ms. Lonergan's male student became physically aggressive towards the substitute paraprofessional that day in class. Ms. Lonergan was forced to intervene. During the incident, her male student hit Ms. Lonergan and forcefully yanked her right arm down to the ground. Ms. Lonergan immediately felt she had injured her arm, neck and upper back.

50. To the best of her recollection, Ms. Lonergan treated over the weekend with Dr. Brandon Schulz, DC. On Monday, October 25, 2021, Dr. Schulz restricted Ms. Lonergan from lifting heavier than 15 pounds or performing any diapering pending because of her injuries.

51. On the morning of October 25, 2021, Ms. Lonergan emailed Supervisor of Human Resources Steven Alfonso and indicated she had been restricted against lifting heavier than 15 pounds and performing diapering activities. Ms. Lonergan indicated that she had recently been instructed by her principal to perform those activities. Ms. Lonergan indicated she would send

over a medical note evincing the restrictions.

52. Mr. Alfonso emailed back that same day. Mr. Alfonso indicated that Principal Brown had not "mandated" that Ms. Lonergan perform diapering but had "simply asked [Ms. Lonergan] to assist." Mr. Alfonso asked Ms. Lonergan to forward his office any doctor's notes indicating her restrictions. Mr. Alfonso concluded the email with the ominous threat "I encourage you to read your job description carefully."

53. Ms. Lonergan emailed back the same day and provided two doctor's notes indicating her restrictions, one from Dr. Schulz, and one from her gastrectomy surgeon.

54. The first note was from Ms. Lonergan's treating chiropractor, Dr. Schulz, described above.

55. The second note was from Ms. Lonergan's treating gastrectomy surgeon, Dr. Donald A. Balder, MD, dated October 25, 2021. Dr. Balder likewise restricted Ms. Lonergan from lifting.

56. The next day, October 26, 2021, Principal Brown held a meeting with Ms. Lonergan to discuss the issue. Mr. Alfonso also attended via conference call.

57. Mr. Alfonso told Ms. Lonergan that STPSB would not provide Ms. Lonergan with any reasonable accommodation based on her injuries, lifting impairments, or diapering impairments. Mr. Alfonso said that STPSB would not "honor" the restrictions ordered by Ms. Lonergan's treating chiropractor or physician.

58. Ms. Brown then told Ms. Lonergan that she had two days to decide whether she would go back to work and perform all lifting and diapering activities against her doctors' orders, or, alternatively, otherwise apply for leave without pay.

59. That same day, Ms. Lonergan again treated for her injuries at her local urgent care clinic. She was treated by Dr. Joshua Vallelungo, MD. Ms. Lonergan was diagnosed with a (1) cervical strain, (2) acute thoracic myofascial strain, and a (3) lumbar paraspinal muscle strain. Ms.

Lonergan was prescribed the muscle relaxant methocarbamol.

60. Based on the hostility shown by Mr. Alfonso and Ms. Brown, Ms. Lonergan began using her accrued sick leave starting on October 27, 2021. As described below, she would continue to use that sick leave until it was exhausted on November 29, 2021.

61. Ms. Lonergan then applied for leave without pay, but Mr. Alfonso denied the request.

62. Ms. Lonergan also applied for extended sick leave, but Mr. Alfonso denied the request.

63. Ms. Lonergan also filed a worker's compensation claim, but STPSB disputed liability for it.

64. Throughout this time, and even until today, Ms. Lonergan has suffered significant disability and impairments because of her injury on October 22, 2021.

65. Ms. Lonergan has continued to treat for her musculoskeletal injuries caused by the events on October 22, 2021.

66. Ms. Lonergan was prescribed muscle relaxant medication for a significant period following her injury.

67. Ms. Lonergan to this day suffers from significant, daily pain concentrated in her upper back, lower back, and neck.

68. Ms. Lonergan to this day is unable to lift heavy objects that able bodied persons would have no difficulty lifting. For instance, she must bring her children grocery shopping with her so that they can lift and carry the groceries home.

69. Ms. Lonergan to this day is unable to perform basic household activities that she was previously able to perform (and that able bodied members of the general population have no difficulty performing) – such as ordinary household cleaning that involves any lifting, stretching, and so on.

70. To the best of her recollection, Ms. Lonergan most recently treated for her injuries and impairments in January 2023. Ms. Lonergan must undergo further physical therapy to rehabilitate from her injuries and impairments.

71. Ms. Lonergan's injuries, disability, and impairments described in this lawsuit are both severe and long lasting.

72. During the final weeks of her employment in November 2021, Ms. Lonergan, through her attorney at the time, repeated to Mr. Alfonso and Ms. Brown her concerns that she could not perform lifting and diapering activities in the classroom because of her injuries and requested any reasonable accommodation available, including simply requiring her paraprofessional to resume performing lifting and diapering activities; or, alternatively, transferring Ms. Lonergan to any of a number of open and available teaching positions at STPSB that were not in special-education classrooms (including virtual teaching positions).

73. For instance, Ms. Lonergan knew there was an open and available Spanish teaching position at Fontainebleau High School she could have been transferred into. Ms. Lonergan knew this because, only two months prior, the Assistant Principal of Fontainebleau High School, Mary Priebe, had offered Ms. Lonergan the position. At the time, Ms. Lonergan had declined the offer because she had already accepted the one-year special education teaching position at Mandeville Junior High.

74. Ultimately, Mr. Alfonso or others denied Ms. Lonergan's request for reasonable accommodation. They refused to instruct Ms. Lonergan's paraprofessional to perform her stated duties to perform all lifting and diapering in the classroom. They refused to transfer Ms. Lonergan to any number of open and available teaching positions she was objectively qualified for. They refused accommodate Ms. Lonergan in any other way.

75. Further, neither Mr. Alfonso nor any other STPSB official ever engaged in the good-faith, interactive process with Ms. Lonergan to determine whether any reasonable accommodation existed that would permit Ms. Lonergan to continue working despite her physical injuries, lifting impairments, and diapering impairments.

76. On November 10, 2021, Ms. Lonergan again emailed Mr. Alfonso a doctor's note describing her injuries and informing him that Ms. Lonergan had filed for worker's compensation benefits.

77. Mr. Alfonso responded two days later and told Ms. Lonergan "Make sure you have your attorney contact ours." Mr. Alfonso again refused to engage in any interactive process whatsoever.

78. Finally, as of November 29, 2021, Ms. Lonergan had exhausted her regular sick leave. Mr. Alfonso made clear that STPSB would not do anything to reasonably accommodate Ms. Lonergan's lifting or diapering limitations. In context, Mr. Alfonso's statement implied that if Ms. Lonergan refused to return to her classroom and perform those activities (even though they were outside the scope of her stated job responsibilities) she would be terminated.

79. On November 29, 2021, because of the untenable position STPSB forced her into, Ms. Lonergan resigned her employment in constructive discharge based on her disability. Ms. Lonergan wrote to Mr. Alfonso:

> Dear Mr. Alfonso:
>
> I was first offered a choice by you of two things, leave without pay or to go back in and to lift 50 lbs when you know that I was injured because I emailed you that and provided you with doctor's notes. Now, you are saying that I can't have leave without pay. You all also denied me worker's compensation. I informed you of my disabilities and you refused [to] assist me in any way or to accommodate my disabilities. If you are unwilling to accommodate my disabilities, then I am being forced to resign under duress.
>
> Sincerely,
> Jacqueline Lonergan

80. Any reasonable teacher in Ms. Lonergan's position would have objectively regarded her position as untenable. Ms. Lonergan could not safely work without some reasonable accommodation to her lifting and diapering impairment. At the same time, STPSB officials indicated that Ms. Lonergan would be terminated if she refused. Objectively, Mr. Alfonso and others purposefully placed Ms. Lonergan into a position in which her separation of employment was guaranteed – either she would resign or be terminated. Under these conditions, Ms. Lonergan resigned her employment in constructive discharge because of STPSB's disability discrimination and related retaliation.

**E. The Aftermath**

81. Ms. Lonergan suffered constructive discharge, loss of her wages, fringe benefits, and future pension value from the Teacher's Retirement System of Louisiana (TRSL), along with the opportunity to obtain student-loan forgiveness through available federal forgiveness programs, because of STPSB's unlawful discrimination and retaliation.

82. Ms. Lonergan suffered significant mental anguish, emotional distress, loss of enjoyment of life, and loss of professional reputation because of STPSB's unlawful discrimination and retaliation.

83. Ms. Lonergan suffered significant out of pocket expenses, other monetary damages, costs, and attorney's fees and costs incurred in litigating this matter because of STPSB's unlawful discrimination and retaliation.

## CAUSES OF ACTION

**A. Unlawful Disparate Treatment Discrimination Based on Disability and Failure to Reasonably Accommodate under the Americans with Disabilities Act (as Amended) against STPSB**

84. Ms. Lonergan states a cause of action for unlawful disparate treatment discrimination based

on disability and failure to accommodate under the Americans with Disabilities Act (as amended) against the St. Tammany Parish School Board.

85. Pursuant to the ADA an employer may not discriminate against an employee "on the basis of disability in regard to . . . [the] discharge of employees. . . ." 42 U.S.C. § 12112(a).

86. To prove a prima facie case for disability discrimination, a plaintiff must show "(1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of her disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). "Disability" means that the plaintiff "is disabled, has a record of having a disability, or is regarded as disabled." *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009).

87. In the first instance, a plaintiff is "disabled" if she suffers from "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1). Relevant here, an "impairment" is "[a]ny physiological . . . condition . . . affecting one or more body systems, such as . . . musculoskeletal[.]" 29 C.F.R. § 1630.2(h)(1). An impairment is substantially limiting when considering "the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). "Major life activities" include but are not limited to "performing manual tasks . . . lifting, bending . . . interacting with others, and working." 29 C.F.R. § 1630.2(i)(1)(i). An impairment is substantially limiting even if it is episodic in nature or in remission, if when the impairment is present it would be substantially limiting. 29 C.F.R. § 1630.2(j)(1)(vii). The determination of whether an impairment is substantially limiting "is made without regard to the ameliorative effects of mitigating measures." 29 C.F.R. § 1630.2(j)(1)(vi).

88. An employer also discriminates against a disabled employee when the employer refuses to

"mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 442 (5th Cir. 2017) (citing 42 U.S.C. § 12112(b)(5)(A)). An accommodation is reasonable unless it imposes "undue financial and administrative burdens" on the employer. *See generally Sch. Bd. of Nassau Cty., Fla. v. Arline*, 480 U.S. 273, 288 n.17 (1987). Likewise, an employer is required to engage in an "informal, interactive process" to determine "potential reasonable accommodations that could overcome those limitations." 29 C.F.R. §1630.2(o)(2)(iii).

89. Alternatively, a plaintiff is disabled when he is "regarded as disabled." 42 U.S.C § 12102(1)(c). A person is "regarded as disabled" when he is "subjected to an action prohibited under the ADA because of 'an actual or perceived' impairment regardless of whether the impairment is, or is perceived to be, substantially limiting." *Kennedy v. Parkview Baptist Sch., Inc.*, 13-478, 2014 WL 7366256 at *6 (M.D. La. Dec. 24, 2014) (citing 42 U.S.C. § 12102(3)(A); 29 C.F.R. § 1630.2(l)(1)-(3)).

90. A public employer who discriminates against a disabled employee by terminating his employment is liable for the employee's resulting damages, including lost back wages, lost future wages, compensatory damages, litigation costs, reasonable attorney's fees, and equitable remedies including reinstatement and front pay.

91. Plaintiff reincorporates here all her factual allegations in this complaint.

92. Ms. Lonergan was injured at work on October 22, 2021. She immediately treated for her injuries. The next workday, she emailed Steven Alfonso, the Supervisor of Human Resources, and alerted him to her the nature of her injuries and her lifting and diapering restrictions. She

supplied requested medical documentation evincing her limitations. Ms. Lonergan suggested at least two reasonable accommodations to continue working – either require her paraprofessional to perform her stated job responsibilities and perform the non-instructional lifting and diapering duties in her class, or transfer to any number of open and available teaching positions throughout STPSB, including both virtual positions and an open Spanish teaching position that Fountainbleau High School assistant principal Mary Priebe had offered to her just two months prior. Ms. Lonergan also requested extended sick leave. It was denied. She requested leave without pay. It was denied.

93. Ms. Lonergan was met with nothing but hostility and a refusal from STPSB management to engage in any interactive process with her whatsoever. Management's refusals were inexplicable. Ms. Lonergan was a valued and successful Spanish teacher with an excellent teacher's record at STPSB. Mr. Alfonso offered no reason (cogent or otherwise) why he refused to accommodate Ms. Lonergan by either requiring her paraprofessional to perform her stated lifting and diapering responsibilities; or transferring Ms. Lonergan to any other open and available position; or at least granting her leave without pay or extended sick leave.

94. The only rational explanation for STPSB's hostility towards Ms. Lonergan, and its refusal to reasonably accommodate her disability and impairments, or even engage in the interactive process, is because Mr. Alfonso or other decision-makers held animus against Ms. Lonergan because of her disability, or because Mr. Alfonso or others regarded her as disabled.

95. In other words, STPSB constructively discharged Ms. Lonergan, and refused to reasonably accommodate her disability and impairments, because of her disability.

96. Accordingly, STPSB is liable to Ms. Lonergan for all her damages arising from STPSB's unlawful discrimination and refusal to accommodate her disability and impairments, including lost

back wages, lost future wages, reinstatement, compensatory damages, litigation costs, and reasonable attorney's fees.

**B. Unlawful Disparate Treatment Discrimination Based on Retaliation under the Americans with Disabilities Act (as Amended) against STPSB**

97. Ms. Lonergan states a cause of action of unlawful disparate-treatment retaliation under the Americans with Disabilities Act (as amended) against St. Tammany Parish School Board.

98. An employer may not retaliate against an employee for engaging in protected activity under the Americans with Disabilities Act. In the Fifth Circuit, "[i]t is undisputed that making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity." *Tabatchnik v. Cont'l Airlines*, 262 Fed. Appx. 674, 676 (5th Cir. 2008). A plaintiff establishes a prima facie case of retaliation by showing that "(1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).

99. Plaintiff reincorporates here all her factual allegations in this complaint.

100. As previously alleged, the hostility and refusal to reasonably accommodate Ms. Lonergan's disability and impairments were inexplicable under the circumstances. Even more so given that, as best as plaintiff understands it, STPSB currently and at the relevant times of the case faced a teacher shortage, and Ms. Lonergan had requested at the very least a transfer to any open and available teaching position at STPSB, including apparently an open Spanish teaching position.

101. Ms. Lonergan emailed Mr. Alfonso on October 25, 2021. She requested a reasonable accommodation from non-instructional lifting and diapering in her class. Ms. Lonergan indicated that she had been ordered recently to engage in those activities. Mr. Alfonso emailed back the same day, disputed that Ms. Lonergan had been ordered to perform diapering, and concluded his

email with the ominous threat "I encourage you to read your job description carefully."

102. On October 26, 2021, Ms. Lonergan met with Principal Brown and Mr. Alfonso (via conference call). Mr. Alfonso told Ms. Lonergan he had already decided to reject the restrictions ordered by her physician and chiropractor. Principal Brown then gave Ms. Lonergan an ultimatum: immediately return to work with no accommodations whatsoever, or apply for leave without pay. Stunned, Ms. Lonergan began taking sick leave and applied for leave without pay. Mr. Alfonso denied her requested leave.

103. Mr. Alfonso never engaged in any interactive process with Ms. Lonergan whatsoever. He remained hostile and threatening from October 25, 2021 onward. His behavior was objectively retaliatory based on Ms. Lonergan's request for reasonable accommodation.

104. The only rational explanation for STPSB's hostility towards Ms. Lonergan, and its refusal to reasonably accommodate her disability and impairments, or even engage in the interactive process, is because Mr. Alfonso or other decision-makers held retaliatory animus against Ms. Lonergan because she requested a reasonable accommodation to her disability and impairments.

105. In other words, STPSB constructively discharged Ms. Lonergan, and refused to reasonably accommodate her disability and impairments, because Ms. Lonergan engaged in the protected activity of requesting reasonable accommodation.

106. Accordingly, STPSB is liable to Ms. Lonergan for all her damages arising from STPSB's unlawful discrimination and refusal to accommodate her disability and impairments, including lost back wages, lost future wages, reinstatement, compensatory damages, litigation costs, and reasonable attorney's fees.

**C. Unlawful Disparate Treatment Discrimination Based on Disability under the Louisiana Employment Discrimination Law (as Amended) against STPSB**

107. Ms. Lonergan states a cause of action of unlawful disparate treatment discrimination based

on disability under the Louisiana Employment Discrimination Law (as amended) against STPSB.

108. Under the LEDL, no employer may discriminate against an employee based on her disability. La. Rev. Stat. Ann. § 23:323 *et seq.* Louisiana's anti-disability-discrimination statute is modeled after the ADA, and analysis under either statute is substantively the same. *See e.g.*, *Stewart v. Smitty's Supply, Inc.*, CV 18-10058, 2020 WL 433362 at *9 (E.D. La. Jan. 28, 2020).

109. Accordingly, for all the reasons stated throughout this complaint, and specifically reincorporating the analysis of plaintiff's claims for disability and failure-to-accommodate discrimination under the ADA (as amended), STPSB is liable to Ms. Lonergan for her damages arising from STPSB's unlawful discrimination and refusal to accommodate her disability and impairments, including lost back wages, lost future wages, reinstatement, compensatory damages, litigation costs, and reasonable attorney's fees.

**D. Unlawful Disparate Treatment Discrimination Based on Retaliation under the Louisiana Employment Discrimination Law (as Amended) against STPSB**

110. Ms. Lonergan states a cause of action of unlawful disparate treatment discrimination based on retaliation under the Louisiana Employment Discrimination Law (as amended) and La. Rev. Stat. Ann. § 51:2256 *et seq.* against STPSB.

111. Under La. Rev. Stat. Ann. § 51:2256 *et seq*., no employer may "retaliate . . . in any manner against a person because he has opposed a practice declared unlawful under [the LEDL]."

112. Accordingly, for all the reasons stated throughout this complaint, and specifically reincorporating the analysis of plaintiff's claims of unlawful disparate treatment retaliation under the ADA (as amended), STPSB is liable to Ms. Lonergan for her damages arising from STPSB's unlawful retaliation, including lost back wages, lost future wages, reinstatement, compensatory damages, litigation costs, and reasonable attorney's fees.

**RESERVATION OF AMENDMENT**

Ms. Lonergan reserves the right to amend this lawsuit as circumstances warrant.

**JURY DEMAND**

Ms. Lonergan requests a trial by jury on all issues and causes of action.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Jacqueline T. Lonergan prays that this complaint be deemed good and sufficient; that it and summons be served upon defendant St. Tammany Parish School Board; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against defendant for all damages and equitable relief due to plaintiff, including lost back wages, lost future wages, reinstatement, compensatory damages, statutory damages, litigation costs, reasonable attorney's fees, and legal interest from the date of demand, and for all other general and equitable relief to which plaintiff is entitled.

Respectfully submitted:

/s/ Kevin S. Vogeltanz

Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A / Mandeville, LA 70448
Telephone: (504) 275-5149
Facsimile: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for plaintiff Jacqueline T. Lonergan*

**Clerk of Court:**
**Please hold summons pending attempt to secure wavier of service**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JACQUELINE T. LONERGAN**<br>**Plaintiff,**<br>**v.**<br>**ST. TAMMANY PARISH SCHOOL BOARD**<br>**Defendant.** | **CIVIL NO. PENDING** |

**DECLARATION OF JACQUELINE T. LONERGAN**

I, Jacqueline T. Lonergan, am 48 years old, and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following facts and true and correct to the best of my knowledge and recollection:

1. I am the named plaintiff in the federal lawsuit *Jacqueline T. Lonergan v. St. Tammany Parish School Board*, soon to be filed in the United States District Court for the Eastern District of Louisiana.

2. After reviewing the entire document, I authorized and instructed my attorney, Kevin S. Vogeltanz, to file the original Complaint in this matter and to assert all of the causes of action included therein.

3. I verify that, at the time of its filing, each of the factual allegations of the Complaint was true and correct to the best of my knowledge and recollection.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and recollection. Executed on 1/31/2023.

DocuSigned by:
Jacqueline Lonergan
DB00A18BFD584CC...
Jacqueline T. Lonergan